**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ELI-RAN YOUSHAEI,<br>Plaintiff,<br><br>v.<br><br>MGH INSTITUTE OF HEALTH PROFESSIONS,<br><br>Defendant. | Case No. 1:24-cv-11290-AK |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

SUMMARY OF FACTS ............................................................................................. 2

LEGAL STANDARD .................................................................................................. 5

ARGUMENT ............................................................................................................. 5

I. Plaintiff's Title VI Claims Are Timely Asserted .................................................. 5

A. Plaintiff Brought His Claim Within The Applicable Three Year Statute of Limitations ........................................................ 6

B. Alternatively, Plaintiff May Still Bring His Claim Under The Continuing Violation Doctrine ........................................................ 8

II. The Complaint Pleads Sufficient Facts to Support a Hostile Educational Environment Claim ........................................................ 10

III. The Complaint Alleges Sufficient Facts to Support An Intentional Discrimination Claim ........................................................ 13

IV. Non-Pecuniary Compensatory Damages Are An Available Remedy .................. 15

CONCLUSION ........................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aghazadeh v. Maine Med Center*,
1999 WL 33117182 (D. Me. June 8, 1999) ....................13

*Andrews v. City of Philadelphia*,
895 F.2d 1469 (3d Cir. 1990)....................10

*Barnett v. Johnson City Sch. Dist.*,
2005 WL 8178066 (N.D.N.Y. Feb. 2, 2005) ....................11

*Carabello v. New York City Dep't of Educ.*,
928 F. Supp. 2d 627 (E.D.N.Y. 2013) ....................13

*Czerwienski v. Harvard Univ.*,
666 F. Supp. 3d 49 (D. Mass. 2023) ....................10

*Doe v. Brown Univ.*,
327 F. Supp. 3d 397 (D.R.I. 2018)....................9

*Doe v. Brown Univ.*,
43 F.4th 195 (1st Cir. 2022)....................15

*Doe v. Derby*,
451 F. Supp. 2d 438 (D. Conn. 2006)....................13

*Goodman v. Bowdoin College*,
380 F.3d 33 (1st Cir. 2004)....................13

*Govan v. Trs. of Bos. Univ.*,
66 F. Supp. 2d 74 (D. Mass. 1999) ....................6, 7

*Guckenberger v. Boston University*,
974 F. Supp. 106 (D. Mass. 1997) ....................16

*In re Jacalyn S. Nosek*,
2006 WL 1867096 (D. Mass. June 30, 2006) ....................16

*Jennings v. Nathanson*,
404 F. Supp. 2d 380 (D. Mass. 2005) ....................16

*Kestenbaum v. President and Fellows of Harvard College*,
2024 WL 3658793 (D. Mass. Aug. 6, 2024) ....................13, 14

*Lemelson v. Wang Lab'ys, Inc.*,
874 F. Supp. 430 (D. Mass. 1994) ....................5

*Maldonado-Cátala v. Mun. of Naranjito*,
876 F.3d 1 (1st Cir. 2017) ....................11

*McGullam v. Cedar Graphics, Inc.*,
609 F.3d 70 (2d Cir.2010)....................9

*Monteiro v. Tempe Union High Sch. Dist.*,
158 F.3d 1022 (9th Cir. 1998) ....................11

*Occean v. Marriott Corp.*,
1994 WL 878962 (Mass. Oct. 4, 1994) ....................16

*Pollard v. Georgetown School Dist.*,
132 F. Supp. 3d 208 (D. Mass. 2015) ....................13

*St. Charles v. Kender*,
38 Mass. App. Ct. 155, 646 N.E.2d 411 (1995) ....................16

*U.S. Sec. & Exch. Comm'n v. Auctus Fund Mgmt., LLC*,
2024 WL 3498593 (D. Mass. July 22, 2024)....................5

*Vargas-Caban v. Caribbean Transp. Servs.*,
279 F. Supp. 2d 107 (D.P.R. 2003)....................11

*Wysocki v. Wardlaw-Hartridge School*,
2023 WL 2728807 (D.N.J. March 31, 2023)....................13

**Statutes**

Mass. Gen. Laws ch. 260, § 2A ....................6

Plaintiff Eli-Ran Youshaei ("Eli-Ran" or "Plaintiff"), through his undersigned counsel, respectfully submits this memorandum of law in opposition to Defendant's July 15, 2024 Partial Motion to Dismiss ("Defendant's Motion to Dismiss"; Doc No. 19). Defendant's Motion to Dismiss addresses solely Count I of Plaintiff's May 14, 2024 Verified Complaint (the "Complaint"; Doc No. 1) and Plaintiff's request for punitive and non-compensatory emotional damages in his prayer for relief.[1] Defendant's Motion to Dismiss does not address Counts II–IV of the Complaint.

**INTRODUCTION**

Eli-Ran, a Jewish physical therapy student of Iranian and Israeli descent, brought the present action against the MGH Institute of Health Professions ("Defendant," or "MGH-IHP") to address MGH-IHP's egregious and unlawful religious, ethnic, and national origin based discrimination that Eli-Ran was and continues to be subjected to in violation of federal anti-discrimination laws and MGH-IHP's own policies. The Complaint describes in detail the extensive harm and damages Eli-Ran has endured as a direct result of MGH-IHP's anti-Semitic, anti-Israeli, and anti-Middle Eastern discrimination and retaliatory conduct against him, including substantial costs involved with MGH-IHP delaying Eli-Ran's graduation from the Physical Therapy Program by over two years at the time of this filing.

Instead of finally addressing the harm that MGH-IHP has caused Eli-Ran, MGH-IHP filed a Motion to Dismiss the Complaint alleging that Count I – Intentional Discrimination and Hostile Environment Towards Jewish Students – is time-barred and fails to state a claim upon which relief may be granted. Defendant also claims that Eli-Ran is not entitled to punitive or non-pecuniary

[1] Plaintiff filed an Amended Verified Complaint ("Amended Complaint") changing his name from "John Doe" to his true name (Doc No. 22) on August 5, 2024. Defendant filed a renewed Motion to Dismiss on August 12, 2024 (Doc No. 24) which is identical in substance to the July 15, 2024 Motion to Dismiss and appears to have been filed in light of Plaintiff's Amended Complaint.

compensatory damages, alleging that these forms of relief are not available under any of the causes of action presented.

Contrary to Defendant's assertions, Count I of the Amended Complaint, which is timely asserted, pleads sufficient facts to support a hostile educational environment claim and to support an intentional discrimination claim. And, the Complaint alleges sufficient facts to support non-pecuniary compensatory damages. As such, Defendant's Motion to Dismiss should be denied.

## SUMMARY OF FACTS

Eli-Ran enrolled in MGH-IHP's Doctor of Physical Therapy degree program ("PT Program") in the summer of 2019 to pursue his dream of becoming a physical therapist. Compl.¶¶ 3, 19.[2] But, within months of his enrollment, Eli-Ran began being subjected to anti-Semitism, unfair grading, harassment, and arbitrary treatment based on his Jewish and Israeli identity.

Eli-Ran's first experience with anti-Semitism and unfair grading at MGH-IHP took place a mere five months after his enrollment – in November 2019 – when Dr. Raina Karim, one of Eli-Ran's professors, commented on his Star of David necklace. *Id.* ¶¶ 20–21. Upon being told by Eli-Ran that he was Israeli-Iranian and that the necklace was a symbol of his Jewish faith, Dr. Karim looked at Eli-Ran with hatred and disgust, declared that she is Lebanese-Palestinian, and proceeded to turn her back on Eli-Ran and walk away. *Id.* ¶ 21. Dr. Karim subsequently graded one of Eli-Ran's practical examinations and gave him an undeserved and unfounded poor grade for the exam. *Id.* ¶ 23. Eli-Ran successfully appealed the grade, and the PT Program agreed that the poor grade assigned to Eli-Ran did not accurately reflect the strength of his clinical reasoning utilized during the exam. *Id.* ¶ 24. Shortly thereafter, Eli-Ran reported Dr. Karim's hostility and

[2] Citations to "Compl." refer to Plaintiff's Amended Complaint.

discriminatory treatment towards him to one of his course instructors, and requested that Dr. Karim not grade any of his future practical exams given her overt prejudice against him. *Id.* ¶ 25.

Thereafter, at least three other MGH-IHP faculty and staff singled out Eli-Ran and acted in a discriminatory manner towards him during interactions that took place in May 2021. First, Eli-Ran's academic advisor, Christopher Clock, asked Eli-Ran how he would approach treatment of a patient that is Palestinian and whether Eli-Ran felt that the actions of the Palestinian people during the Israeli-Palestinian conflict were justified. *Id.* ¶ 32. Second, Eli-Ran's Clinical Advisor, Dr. Donna Applebaum, and the Assistant Dean for Faculty and Student Success, Emile R. "Mike" Boutin Jr., both asked Eli-Ran on separate occasions what his views were towards women, as they assumed based on Eli-Ran's Jewish religion and Middle Eastern origins that he may hold a different stance towards the equal treatment of women. *Id.* ¶¶ 33–34.

This systematic discrimination of Eli-Ran continued throughout the summer of 2021 and into the spring of 2022, as Eli-Ran was preparing to take his Curricular Comprehensive Practical Exam ("CCPE"). Eli-Ran was not allowed to take the exam at the same time as his classmates, was given different instructions than the rest of his classmates on how to prepare for the exam, and was treated differently than his fellow classmates throughout the preparation, administration, and grading of the CCPE – a fact that Mr. Clock admitted when he repeatedly told Eli-Ran that he was a "special circumstance." *See generally id.* ¶¶ 38, 41–42, 46, 48, 50–51, 53, 55.

Due to the inadequate resources awarded to Eli-Ran while studying for the CCPE, the absence of support from any MGH-IHP faculty, and the different exam conditions placed on Eli-Ran while taking the CCPE, Eli-Ran did not pass this exam when he took it for the first time and second times, leading to him being dismissed from the PT Program on February 18, 2022. *Id.* ¶ 57. Eli-Ran started the process of appealing his dismissal from the PT Program, and on March 16,

2022, he was granted a Grade Challenge Appeal Meeting. *Id.* ¶ 65. Unsurprisingly, the original graders of Eli-Ran's CCPEs (including Dr. Karim) upheld their original assessment and denied Eli-Ran's grade appeal. *Id.* ¶ 66. Eli-Ran next had to appeal the decision to the Committee on Academic Policies and Procedures ("CAPP"), which he did on the basis of procedural error and discrimination. *Id.* ¶¶ 68–69. On April 28, 2022, CAPP affirmed Eli-Ran's dismissal from the PT Program without directly addressing *a single one* of Eli-Ran's claims of bias and discrimination. *Id.* ¶ 73. Finally, Eli-Ran initiated a Student Grievance Procedure on May 12, 2022, and was granted a hearing to air his grievances. *Id.* ¶ 76. After hearing all the evidence of the unequal treatment Eli-Ran received while studying at MGH-IHP, the Student Grievance Hearing Panel (the "Panel") reversed Eli-Ran's dismissal from the PT Program on June 23, 2022. *Id.* ¶ 80. The Panel ruled that, after a careful review of MGH-IHP's policies and procedures, there was sufficient information "presented to support, in part, a claim of inequitable application of the Institute's existing rules." *Id.*

Less than two years after the Panel reversed Eli-Ran's dismissal from the PT Program due to an inequitable application of the Institute's existing rules, Eli-Ran filed the Complaint on May 14, 2024, along with a Motion to Proceed by Pseudonym (Doc No. 4). Once this Court denied the Motion to Proceed by Pseudonym (Doc No. 17), Plaintiff filed his Amended Complaint under his real identity on August 5, 2024. Count I is brought under Title VI of the Civil Rights Act of 1964 ("Title VI") (42 U.S.C. § 2000d *et seq*.) to address MGH-IHP's conduct, which has denied Eli-Ran the benefits of, and subjected Eli-Ran to discrimination under, the PT Program at MGH-IHP. As a result of MGH-IHP's violation of Title VI, Eli-Ran has suffered and continues to suffer substantial damages in monetary amounts to be determined at trial.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), in order to survive a motion to dismiss "a complaint must allege sufficient facts to state a claim for relief that is 'plausible on its face' and actionable as a matter of law." *U.S. Sec. & Exch. Comm'n v. Auctus Fund Mgmt., LLC*, 2024 WL 3498593 at *2 (D. Mass. July 22, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). In "reviewing a motion to dismiss the court accepts all well-pled factual averments as true, and draws all reasonable inferences in the nonmovant's favor." *Lemelson v. Wang Lab'ys, Inc*., 874 F. Supp. 430, 432 (D. Mass. 1994). Further, "[a] court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable." *Auctus Fund Mgmt*., 2024 WL 3498593 at *2. Dismissal of a complaint is improper when "the factual allegations present a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Here, ample facts support Plaintiff's claims.

## ARGUMENT

### I. PLAINTIFF'S TITLE VI CLAIMS ARE TIMELY ASSERTED

The Motion to Dismiss wrongly argues that Plaintiff's hostile educational environment claim is time-barred. In particular, Defendant claims the applicable statute of limitations has run with respect to Plaintiff's pre-May 2021 allegations and "Plaintiff's remaining (post-May 2021) allegations of mistreatment by various other individuals do not assert plausible facts to support a conclusion that mistreatment was based on his protected class." Motion to Dismiss ("MTD") at 11. This argument is wholly without merit for two reasons. First, the applicable statute of limitations did not accrue until mid-2022, and Plaintiff properly filed suit within three years of that date. Second, even if this Court were to find that Plaintiff's claim was brought outside the applicable statute of limitations period, Plaintiff's Title VI claim could still be brought under the continuing violation doctrine.

### A. <u>Plaintiff Brought His Claim Within The Applicable Three Year Statute of Limitations</u>

Plaintiff's Title VI claims, including his hostile educational environment claim, were brought well within the applicable Title VI limitations period of three years after the cause of action accrued. As such, the claim is timely asserted.

Defendant is correct that federal claims under 42 U.S.C. § 2000d are governed by the Massachusetts three-year statute of limitations for personal injury claims. *See Govan v. Trs. of Bos. Univ.*, 66 F. Supp. 2d 74, 80 (D. Mass. 1999). Defendant incorrectly asserts, however, that this three-year statute of limitations period dates back only to the three years prior to when the suit was filed. MTD at 10. In other words, Defendant claims the statute of limitations period covers only events occurring on or after May 14, 2021, which is three years before Eli-Ran's initial complaint was filed (on May 14, 2024). That interpretation plainly misreads the statute, which states that actions to recover for personal injury claims shall be commenced within three years "*after the cause of action accrues*." Mass. Gen. Laws ch. 260, § 2A (emphasis added).[3] The "accrual period in a federal civil rights case begins when the plaintiff knows or has reason to know of the injury on which the action is based." *Govan*, 66 F. Supp. 2d at 80. In other words, the statute of limitations begins to run "when the plaintiff knows of the injury or when facts supportive of a civil rights action are or should be apparent to a reasonably prudent person similarly situated." *Id*. (internal quotation marks omitted).

Eli-Ran's claims accrued in the spring or summer of 2022 when Eli-Ran appealed his termination from the PT Program. Indeed, Defendant's own cited authority supports the position that Eli-Ran's claims are timely asserted. In *Govan*, the plaintiff ("Govan"), an African-American

[3] As Defendant admits in a footnote, "the question of when civil rights causes of action accrue is a matter of federal law." MTD, n. 5.

woman, enrolled in a Ph.D. program at Boston University in 1980. *Id*. at 77. She started experiencing "various academic difficulties" in her "early years in the program." *Id*. As part of her curriculum, Govan was required to pass a qualifying comprehensive exam, which she failed three times. *Id*. at 77–78. Govan claimed that she did not have adequate access to resources to study for the exam, that "she was treated differently from white students because the examination tested areas that differed from her domain of study," and that one of her professors gave her faulty advice on how to study. *Id*. at 77. After failing the comprehensive exam for the third time, Govan received written notification of her termination from the Ph.D. program on March 11, 1991. *Id*. at 78. Govan wrote to the Department of Psychology Chair on March 24, 1991, expressing her desire to appeal her termination from the program, "because she believed she had experienced 'differential treatment' and 'questionable supervision.'" *Id*. The Dean of the Graduate school wrote to Govan on May 1, 1992, affirming the decision to terminate Govan from the Ph.D. program. *Id*. at 79. Eventually, Govan filed a complaint on May 7, 1997, alleging that she was treated differently due to her race, in violation of Title VI. *Id*. at 76. In determining whether Govan's Title VI claim was timely, the Court ultimately held:

> Govan knew or had reason to know of all these discriminatory treatment claims by May 1, 1992, when her appeal of the termination from the program was unsuccessful. Indeed, Govan wrote a year earlier, on March 24, 1991, to Mackavey stating her intention to appeal her failing marks on the qualifying examination citing 'irregularities in the administration' of the exam and also differential treatment by the faculty. She even hired a lawyer. Based on the claims asserted by Govan, the Court concludes the facts supportive of Govan's civil rights action would have been apparent to a reasonably prudent person by mid-1992 at the latest. *Id*. at 81.

The facts in *Govan* are easily analogous to Eli-Ran's case. Like Govan, Eli-Ran was subjected to discrimination in his early years in the PT Program, starting with the incident with Dr. Karim just five months after his enrollment. Compl. ¶¶ 21–22. Like Govan, Eli-Ran continued to be subjected to discrimination in the preparation, administration, and grading of his CCPE,

including by having Dr. Karim designated as one of Eli-Ran's graders for his February 16, 2022 CCPE retake. *Id.* ¶ 55. After Eli-Ran was unsuccessful on his CCPE retake, he was similarly dismissed from his Doctorate program and similarly pushed an appeal of his termination to CAPP on the basis of procedural error and discrimination. *Id.* ¶¶ 57–74. Like Govan, Eli-Ran hired an attorney at this point. *Id.* ¶ 71. CAPP similarly denied Eli-Ran's appeal on April 28, 2022 without addressing a single one of his claims of discrimination. *Id.* ¶ 73. Eli-Ran continued to push his appeal, and on June 23, 2022, the Panel reversed Eli-Ran's termination from the PT Program, finding that MGH-IHP had been inequitably applying Institute rules in Eli-Ran's case. *Id.* ¶ 81. Similar to Govan, Eli-Ran learned that there were facts supportive of his civil rights action during this appeal process, which for Eli-Ran was in mid-2022. *Id.* ¶¶ 75–81.

Thus, the statute of limitations for Eli-Ran's Title VI claims began to run in mid-2022 and by June 23, 2022 at the latest. *Id.* ¶¶ 75–81. That date was the first, and only, time that MGH-IHP has remotely addressed Eli-Ran's claims of discrimination. But, unlike Govan, who waited five years to file suit after her appeal was unsuccessful, Eli-Ran filed his Complaint on May 14, 2024 – less than two years after the Massachusetts three-year statute of limitations for personal injury claims began to run. His Title VI claims are timely.

### B. <u>Alternatively, Plaintiff May Still Bring His Claim Under The Continuing Violation Doctrine</u>

Even if this Court were to find that Plaintiff's Title VI claim was brought outside of the applicable statute of limitations period, Plaintiff is still allowed to assert his Title VI claim under the continuing violation doctrine.

The continuing violation doctrine is "an equitable exception that allows ... damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier

claims." *Doe v. Brown Univ.*, 327 F. Supp. 3d 397, 408 (D.R.I. 2018) (quoting *O'Rourke v. City of Providence*, 235 F.3d 713 (1st Cir. 2001)). This doctrine has been explicitly recognized in this Circuit as applicable to Title VI claims. *Id.* Courts may consider allegations that occurred outside of the applicable statute of limitations period when such allegations constitute other acts "contributing to that hostile environment [that took] place within the statutory time period." *See McGullam v. Cedar Graphics, Inc.,* 609 F.3d 70, 75 (2d Cir.2010) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 122 S. Ct. 2061 (2002)).

Applying the continuing violation doctrine here, Eli-Ran may properly bring his hostile educational environment claim based on his pre-May 2021 allegations, even if they occurred outside of the applicable statute of limitations period, because his post-May 2021 allegations contribute to his overall hostile environment claim. As Defendant admits, "Plaintiff claims that throughout the nearly five-year period during which he has been enrolled at MGH-IHP, he has been subjected to 'religious, ethnic, and national origin based' discrimination." MTD at 3. Specifically, the Complaint states that "Eli-Ran was subject to discrimination involving ethnic and ancestral stereotypes when … Eli-Ran received different and unequal treatment [than] his peers in conjunction with the CCPE and his academic path since." Compl. ¶ 140. Eli-Ran began preparing for the CCPE around December 2021, and took the exams on February 8 and February 16, 2022 – a time that Defendant does not dispute is within the applicable statute of limitations period. *Id*. ¶¶ 40, 49, 55. One such incident that specifically anchors the CCPE to the Eli-Ran's earlier allegations is the fact that Dr. Karim was allowed to grade Eli-Ran's CCPE retake in February 2022, despite Eli-Ran's request to Mr. Clock to not have her grade any of his future exams after she was found to have improperly graded him back in 2019. *Id*. ¶ 25.

Furthermore, Defendant's self-serving and conclusory statement that Plaintiff's post-May 2021 allegations "do not assert plausible facts to support a conclusion that mistreatment was based on his protected class" holds no water. MTD at 11. Eli-Ran's post-May 2021 allegations do not exist in a vacuum, but rather must be considered together with the previous incidents of anti-Semitic, anti-Israeli, and anti-Middle Eastern harassment to properly assess Defendant's discriminatory motivation. When viewed in context, the Complaint contains ample support for this Court to find that the post-May 2021 incidents of harassment alleged by Plaintiff were motivated by discriminatory animus. *See Andrews v. City of Philadelphia,* 895 F.2d 1469, 1484 (3d Cir. 1990) ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario.... What may appear to be a legitimate justification for a single incident of alleged harassment may look pretextual when viewed in the context of several other related incidents.") (internal quotation marks omitted). Thus, considering all allegations in context and applying the continuing violation doctrine, Eli-Ran's hostile environment claim is not time-barred.

## II. THE COMPLAINT PLEADS SUFFICIENT FACTS TO SUPPORT A HOSTILE EDUCATIONAL ENVIRONMENT CLAIM

Defendant is wrong in claiming that the Complaint fails to plead sufficient facts to state a claim of hostile educational environment.

To plead a Title VI hostile environment claim, a plaintiff must allege that (1) "he or she was subject to severe, pervasive, and objectively offensive" harassment, (2) the harassment "caused the plaintiff to be deprived of educational opportunities or benefits," (3) "the school knew" of the harassment, and (4) "the school was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances." *Czerwienski v. Harvard Univ*., 666 F. Supp. 3d 49, 84 (D. Mass. 2023) (internal quotation marks omitted). Defendant claims Eli-Ran's allegations "do not represent sufficient, non-conclusory

factual allegations that the race-based and/or national origin-based harassment claimed to have been suffered was of such severity and pervasiveness as to create an abusive educational environment." MTD at 12. Thus, Defendant challenges only the first element – severe and pervasive harassment.

When evaluating whether allegations of harassment are sufficiently severe and pervasive to support a hostile environment claim, "a court must mull the totality of the circumstances, including factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [a plaintiff's] performance." *See Maldonado-Cátala v. Mun. of Naranjito*, 876 F.3d 1, 10 (1st Cir. 2017) (internal quotation marks omitted). Because this inquiry is typically fact-intensive, courts are hesitant to grant a motion to dismiss on this prong before discovery has been conducted. *See e.g.*, *Vargas-Caban v. Caribbean Transp. Servs.*, 279 F. Supp. 2d 107, 110 (D.P.R. 2003) (declining to grant a motion to dismiss based on the argument that the plaintiff had not plead "conditions 'severe and pervasive' enough" "without further discovery"). Additionally, courts have regularly found allegations of far less severe and pervasive harassment than Eli-Ran experienced sufficient to support a hostile environment claim. *See e.g.*, *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1032–35 (9th Cir. 1998) (finding plaintiffs sufficiently alleged a violation of Title VI under a hostile environment theory where students were called racial epithets by their peers, school officials refused to accept complaints, and refused to take any action to end the racist misconduct); *Barnett v. Johnson City Sch. Dist.*, 2005 WL 8178066, at *2, 6 (N.D.N.Y. Feb. 2, 2005) (racially hostile educational environment adequately pled where student was told by a school official to "act respectful, even if your parents aren't," after the student yelled at white

students and their parents believing they were disrespecting her mother, and the student was disciplined but the white children were not).

Eli-Ran has pled more than sufficient facts to sustain a claim that he was subjected to pervasive harassment at MGH-IHP that led to an abusive educational environment. Initially, Defendant admits that Eli-Ran "was subject to harassing comments and other behaviors on the basis of his protected class status." MTD at 12. The Complaint also clearly sets forth how: (1) MGH-IHP faculty members questioned Eli-Ran's ability to equitably treat physical therapy patients who are women or of Palestinian origin; (2) Eli-Ran was publicly humiliated for wearing his Star of David necklace to class; (3) Eli-Ran was told to be aware of his presence as a Middle Eastern man in the workplace; (4) Eli-Ran was improperly graded based on prejudice; (5) Eli-Ran received different and unequal treatment than his peers in conjunction with the CCPE and his academic path since. *See generally* Compl. ¶¶ 21–24, 32–34, 41–56. The Complaint also alleges how the discriminatory conduct that Eli-Ran faced had a severe impact on him, unreasonably interfered with his performance in school, and was carried out by the very people whose job it was to support Eli-Ran in his academic endeavors. *See generally id*. MGH-IHP faculty members created such a hostile learning environment that Eli-Ran no longer felt safe on MGH-IHP's campus. *Id.* ¶ 160. Considering the totality of these circumstances and drawing all reasonable inferences in Eli-Ran's favor at this pleading stage, this Court will find that the allegations of

harassment Eli-Ran faced at MGH-IHP are sufficiently severe and pervasive to survive a motion to dismiss.[4]

## III. THE COMPLAINT ALLEGES SUFFICIENT FACTS TO SUPPORT AN INTENTIONAL DISCRIMINATION CLAIM

In addition to his hostile educational environment claim, Plaintiff has also plead sufficient facts to support an intentional discrimination claim under Title VI.

A claim of intentional discrimination under Title VI requires showing that the defendant discriminated against the plaintiff on the basis of his protected status, that "the discrimination was intentional, and the discrimination was a substantial or motivating factor behind the defendant's actions." *See, e.g.*, *Goodman v. Bowdoin College*, 380 F.3d 33, 43 (1st Cir. 2004) (noting that "direct or circumstantial evidence of racial animus" is "a necessary component" of a Title VI claim). Proving intent is fact-specific, so courts apply a less stringent standard when ruling on intent during the motion to dismiss phase. *See e.g.*, *Aghazadeh v. Maine Med Center*, 1999 WL 33117182 at *5 (D. Me. June 8, 1999) (finding that "the third amended complaint appears to offer minimal but adequate allegations of intentional conduct to survive a motion to dismiss this aspect of the Title VI claim," despite describing the allegations of intentional discrimination as "brief and conclusory"). Discriminatory intent may be proven "based on evidence of past treatment towards other similarly situated." *Kestenbaum v. President and Fellows of Harvard College*, 2024 WL 3658793, at *7 (D. Mass. Aug. 6, 2024) (internal quotation marks omitted). If "the circumstances

[4] Defendant's citations in support of the proposition that Eli-Ran does not sufficiently allege severity and pervasiveness are entirely distinguishable or inapposite (in addition to being from outside this jurisdiction). *See, e.g.*, *Pollard v. Georgetown School Dist.*, 132 F. Supp. 3d 208, 230 (D. Mass. 2015) (dismissing plaintiff's harassment claim under Title VI because the complaint involved only "*one* allegation related to ethnic or national origin harassment") (emphasis added); *Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013) (involving claims of sexual harassment under Title IX which are subject to a different test); *Doe v. Derby*, 451 F. Supp. 2d 438, 444 (D. Conn. 2006) (same); *Wysocki v. Wardlaw-Hartridge School*, 2023 WL 2728807, at *7 (D.N.J. March 31, 2023) (involving only two incidents of alleged harassment based on Instagram posts).

of the comparator . . . [are] reasonably comparable and the nature of the infraction and knowledge of the evidence by college officials [is] sufficiently similar," there is an adequate basis for an inference that the discrimination was racially motivated. *Id*. (internal quotation marks omitted).

Here, Defendant's Motion to Dismiss does not even dispute that Eli-Ran was discriminated against on the basis of his protected status. Rather, Defendant argues that Plaintiff has failed to "plausibly allege any facts to support the conclusion that the adverse treatment about which he complains was intentional and, in fact, motivated by (i.e., 'because of') unlawful bias." MTD at 6. Despite Defendant's assertions, Plaintiff has plead adequate facts to show that the discrimination he was subjected to at MGH-IHP was both intentional and motivated by discriminatory animus. The Complaint details several instances where Eli-Ran was treated differently than his fellow classmates, the comparators. Even just looking at the circumstances around the CCPE, Eli-Ran was forced to take the exam at a later date than the rest of his classmates, he was required to study alone while the rest of his classmates were encouraged to study in groups, his allotted time slot to study in the school provided center was more limited than his classmates, he was the only one of his classmates who had an MGH-IHP faculty member participating during the exam, and he had to wait eight days to retake the exam while the rest of his classmates were allowed to retake it within in three days. Compl. ¶¶ 38, 41, 48, 50–51. These allegations are not brief nor conclusory – they are detailed accounts of how MGH-IHP school rules were not applied equitably to Eli-Ran as compared to the rest of his classmates, a fact that MGH-IHP *has already admitted* during Eli-Ran's June 23, 2022 Student Grievance Procedure. *Id.* ¶¶ 80, 126. The Complaint easily satisfies the requirement of showing discriminatory intent.

Moreover, MGH-IHP's stated reasons for its actions and inactions amounting to intentional discrimination of Eli-Ran give rise to "an inference of discriminatory animus" given those stated

reasons are false and "a sham intended to cover up [MGH-IHP's] real and unlawful motive." *Doe v. Brown Univ.*, 43 F.4th 195, 208–209 (1st Cir. 2022) (quoting *Joseph v. Lincare, Inc.*, 989 F.3d 147 (1st Cir. 2021)). This inference can be drawn from a number of facts alleged in the Complaint, including, in particular, the allegations involving Dr. Karim. Eli-Ran had faced minimal academic hardship before enrolling in Dr. Karim's class and graduated *Magna Cum Laude* from UCLA. Compl. ¶ 3. Then, Dr. Karim gave Eli-Ran an undeserved and unfounded poor grade on a practical examination after finding out he is Jewish and commenting on his Star of David necklace. *Id.* ¶¶ 21–24. MGH-IHP *agreed* that Dr. Karim's grade did not adequately represent the strength of Eli-Ran's clinical reasoning. *Id.* ¶ 24. Yet, adding insult to injury, MGH-IHP proceeded to permit Dr. Karim to grade Eli-Ran on his CCPE retake. *Id.* ¶ 55. MGH-IHP subsequently fabricated that Eli-Ran failed to meet program standards and created program requirements for him that other students did not need to fulfill. *Id.* ¶ 99, 115. MGH-IHP's stated reasons for its actions are false and a sham intended to cover up its real and unlawful discrimination of Eli-Ran.

As such, the allegations of intentional discrimination in the Complaint are sufficient to satisfy Plaintiff's burden at the pleading stage, where this Court must accept all well-plead factual allegations as true, and draw all reasonable inferences in the non-moving party's favor.

## IV. NON-PECUNIARY COMPENSATORY DAMAGES ARE AN AVAILABLE REMEDY[5]

Defendant is wrong that Plaintiff cannot recover emotional distress damages for his breach of contract claims.

Eli-Ran alleges sufficient facts to support a recovery for emotional distress damages resulting from claims for breach of contract and breach of the implied covenant of good faith and

[5] Plaintiff hereby withdraws the portion of Paragraph b. of the Prayer for Relief in the Amended Complaint requesting punitive damages and does not address Defendant's Motion to Dismiss arguments on punitive damages herein.

fair dealing. Damages for emotional distress are recoverable in breach of contract actions if "the breach of contract is of such a nature particularly likely to produce emotional distress, damages for that emotional distress may be recovered." *St. Charles v. Kender*, 38 Mass. App. Ct. 155, 159, 646 N.E.2d 411, 413 (1995); *see also Jennings v. Nathanson*, 404 F. Supp. 2d 380, 396 (D. Mass. 2005) ("[a] plaintiff may recover emotional damages if . . . the breach is of such a kind that serious emotional disturbance was a particularly likely result") (internal quotation marks omitted).

In *Guckenberger v. Boston University*, 974 F. Supp. 106, 153 (D. Mass. 1997), the court awarded a plaintiff damages for the emotional distress caused by Boston University in intentionally failing to give her timely advance notice of a chance in policy and in administering its program in a discriminatory manner. And, in *Occean v. Marriott Corp.*, 1994 WL 878962, at *5 (Mass. Oct. 4, 1994), the court held that the plaintiff was entitled to emotional damages because it was foreseeable that breaching the contract would cause emotional distress. *See also In re Jacalyn S. Nosek*, 2006 WL 1867096, at *16 (D. Mass. June 30, 2006) (finding defendant's failure to apply plaintiff's payments to her account in a timely fashion was "such a breach that it was reasonably foreseeable that a serious emotional disturbance would occur").

Here, MGH-IHP's breach of contract is of a nature that makes emotional distress foreseeable and even "particularly likely." *Jennings*, 404 F. Supp. 2d at 397. MGH-IHP breached its contract with Eli-Ran by failing to prevent – and even permitting and endorsing – discriminatory and harassing conduct which humiliated Eli-Ran and created such a hostile environment that he no longer felt safe on campus. Compl. ¶ 160. MGH-IHP's breach also included ousting him from the physical therapy program and denying him the full opportunity to benefit from learning at MGH-IHP (such that his degree has been delayed by more than two years, as of the filing of this opposition). *See generally id.* ¶¶ 57, 118, 140–43. There is no legitimate question that MGH-

IHP's breaches caused Eli-Ran emotional distress that was a particularly likely result and/or foreseeable to MGH-IHP. Accordingly, the Court should not dismiss or strike Eli-Ran's request for compensatory damages arising from emotional distress.

## CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss should be denied.

August 19, 2024

Respectfully submitted,

WILLKIE FARR & GALLAGHER LLP

By: */s/ Debra Bogo-Ernst*
Debra Bogo-Ernst (admitted *pro hac vice*)
Zaina Fontane (admitted *pro hac vice*)
Amanda Wigler (admitted *pro hac vice*)
300 North LaSalle Dr.
Chicago, IL 60654
312-728-9000
dernst@willkie.com
zfontane@willkie.com
awigler@willkie.com

THE LAWFARE PROJECT

By: */s/ Benjamin Ryberg*
Benjamin Ryberg (admitted *pro hac vice*)
633 Third Avenue, 21st Floor
New York, NY 10017
212-339-6995
ben@thelawfareproject.org

*Attorneys for Plaintiff Eli-Ran Youshaei*

## CERTIFICATE OF SERVICE

I, Debra Bogo-Ernst, hereby certify that, on August 19, 2024, the foregoing Opposition to Defendant's Partial Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ Debra Bogo-Ernst*
Debra Bogo-Ernst (admitted *pro hac vice*)