UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ELI-RAN YOUSHAEI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 1:24-CV-11290-AK |
| v. | ) | |
| | ) | |
| MGH INSTITUTE OF HEALTH PROFESSIONS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER ON DEFENDANT MGH INSTITUTE OF HEALTH PROFESSIONS' PARTIAL MOTION TO DISMISS

**ANGEL KELLEY, D.J.**

Plaintiff Eli-Ran Youshaei ("Youshaei") sued Defendant MGH Institute of Health Professions ("MGH-IHP") alleging intentional discrimination and harassment based on a hostile educational environment, retaliation, breach of contract, and breach of the implied covenant of good faith and fair dealing. [Dkt. 22]. Youshaei alleges that he was subjected to religious, ethnic, and national origin discrimination during his enrollment. Id. MGH-IHP seeks to dismiss Count I of the Complaint in its entirety and to dismiss or strike Youshaei's request for non-pecuniary compensatory damages. [Dkt. 23]. In support of dismissal, MGH-IHP argues that the hostile environment claim is time-barred, that both the hostile environment and intentional discrimination claims lack plausible allegations, and that binding precedent has prohibited demands for compensatory damages. [Dkt. 24]. For the following reasons, MGH-IHP's Partial Motion to Dismiss [Dkt. 23] is **DENIED**.

1

I.    RELEVANT FACTS

The facts are taken from the Amended Complaint [Dkt. 22], which the Court must accept as true for the purpose of resolving MGH-IHP's motion. Langadinos v. Am. Airlines, Inc.,199 F.3d 68, 69 (1st Cir. 2000).

A.  Factual Background

Youshaei enrolled at MGH-IHP in 2019 to pursue a Doctorate in Physical Therapy (the "Program"). [Dkt. 22 at ¶ 19]. In November 2019, during a Patient/Client Management class session, Dr. Rania Karim noticed Youshaei's Star of David necklace and inquired about his nationality. [Id. at ¶¶ 20, 21]. After Youshaei identified himself as Israeli-Iranian, Dr. Karim reportedly shook her head in disgust, stated that she is Lebanese-Palestinian, and walked away. [Id. at ¶ 21]. Subsequently, Youshaei received a "poor" and "undeserved" grade on a practical examination from Dr. Karim that was changed in his favor after he appealed. [Id. at ¶¶ 23-24]. Youshaei reported his interactions with Dr. Karim to Professor Christopher Clock and requested that Dr. Karim not grade his future exams. [Id. at ¶ 25].

In April 2021, during Clinical Experience II, Youshaei received another low grade – this time on his Clinical Performance Instrument ("CPI") from Dr. Amanda Driscoll. [Id. at ¶ 27]. He alleges that Dr. Driscoll's evaluation method did not comply with American Physical Therapy Association (APTA) guidelines and appeared biased against his protected status. [Id. at ¶¶ 29-30]. His refusal to sign off on the CPI led to him failing Clinical Experience II and necessitating a new academic plan (the "Plan"). [Id. at ¶¶ 30, 31]. As a part of the Plan, Youshaei was mandated to meet regularly with two professors and a Dean. [Id. at ¶ 31]. In May 2021, all three of them questioned Youshaei's ability to treat Palestinian patients and women,

2

implying bias based on his Jewish and Middle Eastern background, making him feeling targeted and uncomfortable. [Id. at ¶¶ 31-35].

Youshaei was required to enroll in a Special Topics course in summer 2021 with Dr. Jane Baldwin despite not completing its prerequisite course: Clinical Experience II. [Id. at ¶ 36]. Both Dr. Baldwin and Professor Clock acknowledged that Youshaei's enrollment was "out of sequence," as he could not pass Clinical Experience II due to his refusal to sign the CPI from Dr. Driscoll's evaluation. [Id.]. Youshaei felt that Dr. Baldwin treated him harshly, and he was later informed he was not on track to pass the Special Topics course, prompting him to withdraw from the course at his own expense. [Id. at ¶ 37].

In July 2021, Youshaei was informed he needed to pass Clinical Experience II before taking the Program's mandatory Curricular Comprehensive Practical Exam ("CCPE"). [Id. at ¶ 38]. This delay meant he would not take the CCPE with his classmates, which was concerning due to the common practice of group study. [Id. at ¶ 39].

While preparing for the CCPE, Youshaei received limited resources compared to his classmates and was advised to study independently. [Id. at ¶¶ 41-52]. Youshaei had restricted access to study resources and support, and only had one point of contact—Dr. Naidoo—during his preparation, while his classmates had multiple contacts. [Id. at ¶¶ 42-43]. Youshaei was allocated just one time slot to study at the IMPACT Center[1], while his peers were permitted access on multiple days and to collaborate freely. [Id. at ¶ 48]. When the CCPE occurred, Dr.

---

[1] The Impact Center provides pro bono services to children and adults in the local community experiencing long-term neurological, cardiopulmonary, and musculoskeletal issues. Marjorie K. Ionta PT Center for Clinical Education and Health Promotion | MGH IHP.

3

Naidoo served the dual role as proctor[2] and mock patient, which was out of the ordinary and caused Youshaei confusion and negatively impacted his performance, ultimately leading to him failing to pass the CCPE. [Id. at ¶¶ 49-50].

After failing the CCPE, Youshaei requested an immediate retake but was told to wait eight days, while his classmates could retake it within three days. [Id. at ¶ 51]. He sought assistance from Professor Clock for his retake preparation, but was informed he was a "special circumstance" and could not receive help. [Id. at ¶ 53]. Additionally, Youshaei discovered errors in the grading of his CCPE. [Id. at ¶¶ 54, 63]. He retook the CCPE on February 16, 2022 with Dr. Karim assigned as one of the graders, who ultimately gave him a failing grade on the retake. [Id. at ¶ 55].

On February 18, 2022, two days after his CCPE retake, Youshaei received an email from Dr. Laura Plummer, then-Chair of the Physical Therapy Department (the "Department"), notifying him of his dismissal from the Program. [Id. at ¶ 57]. His badge was deactivated, barring him from campus and resources, and he was not informed of his right to appeal. [Id. at ¶¶ 57-58]. This immediate action prevented Youshaei from accessing materials necessary to appeal his dismissal. [Id. at ¶ 59]. After reviewing the grading rubrics and confirming misinformation about his performance, he appealed his dismissal to the Department's Committee on Academic Policies and Procedures ("CAPP"), citing procedural errors and previous discriminatory questions regarding his identity. [Id. at ¶ 68]. He highlighted the discrepancy in his scoring, the Star of David incident with Dr. Karim, the line of questioning from his professors suggesting his bias, and the differential treatment he experienced during CCPE

---

[2] Dr. Baldwin, who previously treated Youshaei harshly leading to his withdrawal from her course, was also a CCPE grader.

4

preparation. [Id. at ¶¶ 68-69]. Additionally, Youshaei requested the exclusion of Dr. Karim, Dr. Applebaum, Dr. Naidoo, Dr. Baldwin, and Professor Clock from any further CAPP review. [Id. at ¶ 70]. Dr. Plummer subsequently informed Youshaei that CAPP had affirmed his dismissal from the Program. [Id. at ¶ 73]. Her email did not address whether the faculty he named participated in the decision. [Id. at ¶ 73].

Following this, Youshaei filed a civil complaint with the Massachusetts Commission Against Discrimination. [Id. at ¶ 75]. He also initiated MGH-IHP's Student Grievance procedure. [Id. at ¶¶ 76-77]. After a hearing, the Student Grievance Panel reversed his dismissal from the Program, citing inequitable rule application, but did not address his discrimination claims. [Id. at ¶¶ 79-80]. Youshaei collaborated with Dr. Plummer to devise a plan to complete his outstanding coursework for the Program, which included a clinical internship and passing the CCPE. [Id. at ¶¶ 83-95]. Because he had moved, Youshaei was permitted to complete the clinical internship in California where he was residing. [Id. at ¶¶ 84- 90, 93].

By May 2023, Youshaei had successfully passed the CPPE and completed all required coursework except for the capstone Clinical Internship. [Id. at ¶¶ 93-94]. He began the Clinical Internship in June 2023, intending to complete a clinical rotation under Dr. Chan at Concentra Medical Center in California. [Id. at ¶ 95]. Dr. Chan was allegedly instructed to "be tough" on Youshaei, and during the rotation he provided inconsistent and factually inaccurate feedback. [Id. at ¶¶ 96, 100-101]. On September 9, 2023, Youshaei was cautioned by Dr. Monica Arrigo of MGH-IHP's clinical education team that he was at risk of failing the internship, though Dr. Chan nor anyone in California ever informed him of this risk. [Id. at ¶ 99, 102]. On October 2, 2023, Youshaei requested a meeting between himself, Dr. Chan, Dr. Arrigo, and Dr. Plummer to discuss the feedback discrepancies, but MGH-IHP denied his request. [Id. at ¶ 104].

On October 6, 2023, Dr. Plummer again informed Youshaei that he was not on track to pass Clinical Internship and complete the Program, and presented him with three options for moving forward: (1) accept an incomplete grade for the Clinical Internship, requiring an 11-week National Physical Therapy Exam (NPTE) course and extending his studies; (2) have faculty assign his final grade, risking dismissal if he failed; or (3) voluntarily withdraw from the Program and receive a Master of Health Studies degree instead of a Doctorate of Physical Therapy degree. [Id. at ¶¶ 105-106, 108]. Youshaei expressed concerns about these options, particularly how the first option would delay his graduation, the second brought risks of biased grading, and the third would negate his years of effort. [Id.]. On October 24, Dr. Plummer introduced an additional option, which included an incomplete grade, the NPTE course, and a practical exam. [Id. at ¶ 108]. Youshaei requested a meeting and proposed waiving the extension and additional exam, but these requests were ignored. [Id. at ¶¶ 109-110].

On November 29, 2023, Youshaei's lawyer contacted MGH-IHP's attorney regarding potential unlawful retaliation and suggested that future assessments should relate to his experience. [Id. at ¶ 111]. On December 13, MGH-IHP's attorney acknowledged that any practical exam would be relevant to Youshaei's background but dismissed some other requests. [Id. at ¶¶ 112-14]. Youshaei's counsel followed up, stressing the need for consistency in assessments and expressed Youshaei's loss of confidence in the faculty. [Id. at ¶ 113].

In January 2024, Youshaei chose the fourth option: accepting an incomplete grade for the Clinical Internship, while committing to an 11-week NPTE course, an Academic Practice Exam and Assessment Tool exam, and one more practical examination. [Id. at ¶¶ 108, 116]. In accepting this option, he reserved his right to withdraw and initiate an external investigation at any time. [Id. at ¶¶ 105, 108-16]. Following this, Youshaei ceased communication with MGH-

IHP on his lawyer's advice. [Id. at ¶ 117]. In April 2024, MGH-IHP informed Youshaei that the fourth option was revoked and effectively dismissed him from the Program by leaving him with only the choice of graduating with a master's degree instead of a doctorate. [Id. at ¶ 118].

### B. Procedural Background

Youshaei filed this lawsuit on May 14, 2024 [Dkt. 1] and amended his complaint on August 5, 2024 [Dkt. 22]. He asserts four claims against MGH-IHP: 1) intentional discrimination and hostile environment toward Jewish students in violation of Title VI of the Civil Rights Act of 1964[3] (Count I); 2) retaliation in violation of Title VI (Count II); 3) breach of contract (Count III); and 4) breach of the implied covenant of good faith and fair dealing (Count IV). He seeks relief in the form of injunctive relief and monetary damages. [Dkt. 22 at 39-40]. On August 12, 2024, MGH-IHP moved to partially dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Count I should be dismissed in its entirety because the hostile environment claim is time-barred and fails to state a valid claim, while asserting the intentional discrimination claim is also deficient. [Dkt. 23]. MGH-IHP

---

[3] Congress has authority under the Spending Clause of the Constitution to impose conditions on federal funds, treating statutes enacted under this clause as akin to contracts. Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 17 (1981). Several statutes prohibit discrimination by recipients of federal financial assistance based on protected characteristics, including Title VI, which prohibits discrimination based on race, color, or national origin in federally funded programs. As a recipient of federal funding [Dkt. 22 ¶ 15], MGH-IHP is required to comply with Title VI and can be sued under it. Barnes v. Gorman, 536 U.S. 181, 185, 187 (2002); Cummings v. Premier Rehab Keller, P.L.L.C., 596 U.S. 212, 218 (2022). Notably, Title VI and Title IX operate similarly, as both statutes condition federal funding on the promise that recipients will not discriminate. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 286 (1998). This allows for analogous legal analysis and recovery avenues. See id.

additionally seeks to strike Youshaei's request for non-pecuniary compensatory damages, asserting that such a request is legally foreclosed.[4]  [Id.].

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Evans v. Staples, Inc., 375 F. Supp. 3d 117, 120 (D. Mass. 2019).  In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Id. at 121 (citing Langadinos, 199 F.3d at 68).  A complaint must provide sufficient factual content to state a claim that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, the plaintiff must allege enough facts to raise a right to relief above the speculative level.  Evans, 375 F. Supp. 3d at 123.  Legal conclusions and unwarranted inferences, however, are insufficient.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  The court's review is generally limited to the allegations contained in the complaint and any attached documents or matter of public record.  See Rios-Campbell v. U.S. Dep't of Com., 927 F.3d 21, 25 n.2 (1st Cir. 2019) (collecting cases).

## III. DISCUSSION

MGH-IHP attacks the Count I on three bases, and this Court addresses each in turn.

### A. Hostile Educational Environment

First, MGH-IHP attacks Youshaei's claim for hostile educational environment on two fronts: 1) the claim is anchored by facts dating back to 2019 that are time-barred; and 2) his

---

[4] MGH-IHP also moved to strike Youshaei's request for punitive damages, as such damages are not an available remedy under any of the claims presented.  Youshaei has since withdrawn the portion of his prayer for relief in the Amended Complaint seeking punitive damages.  Consequently, the Court will only consider the parties' arguments regarding non-pecuniary compensatory damages.

8

allegations are not sufficiently severe and pervasive to create an abusive educational setting. [Dkt. 24 at 9-11]. To establish a hostile educational environment claim under Title VI, a plaintiff must demonstrate that: (1) they were subjected to harassment that was "severe, pervasive, and objectively offensive"; (2) this harassment deprived them of educational opportunities or benefits; (3) the school was aware of the harassment; (4) the harassment occurred within the school's programs and activities; and (5) the school was deliberately indifferent to the harassment, making its response (or lack thereof) clearly unreasonable given the known circumstances. Kestenbaum v. President & Fellows of Harvard Coll., 743 F. Supp. 3d 297, 308 (D. Mass. 2024) (quoting Porto v. Town of Tewksbury, 488 F.3d 67, 72-73 (1st Cir. 2007)).

Courts assess the severity and pervasiveness of the harassment by considering various factors, including frequency, physicality, and interference with educational opportunities. Kestenbaum, 743 F. Supp. 3d at 308 (citing Gerald v. Univ. of P.R., 707 F.3d 7, 18 (1st Cir. 2013). Importantly, conduct that may be deemed non-actionable when perpetrated by a student can become actionable if committed by someone in a position of relative power, such as a professor. See Czerwienski v. Harvard Univ., 666 F. Supp. 3d 49, 86 (D. Mass. 2023) (citing Doe v. Pawtucket Sch. Dep't, 969 F.3d 1, 11 (1st Cir. 2020)). The determination of whether a hostile educational environment exists is made on a case-by-case basis, taking into account the totality of the circumstances. See Guckenberger v. Bos. Univ., 957 F. Supp. 306, 314–15 (D. Mass. 1997). For example, a court in this district recently found that the plaintiffs plausibly pled their claim because the university failed to take remedial action for over a year after its own investigator concluded that a professor's conduct "more likely than not . . . 'ran counter' to [the university's] free speech and anti-bias policies." Louis D. Brandeis Ctr. for Hum. Rts. Under L. v. President & Fellows of Harvard Coll., No. CV 24-11354-RGS, 2024 WL 4681802, at *5 (D.

Mass. Nov. 5, 2024). Similarly, in Kestenbaum, the court recognized that repeated confrontational and physically violent protests contributed to a hostile environment that affected plaintiffs' daily lives, leading them to dread walking through campus and miss classes. Kestenbaum, 743 F. Supp. 3d at 308–09.

A claim of hostile educational environment under Title VI is time-barred unless filed within the time limitations governed by state statutes. Massachusetts law establishes a three-year statute of limitations for personal injury claims. M.G.L. Ch. 260, Section 2A ("Except as otherwise provided, actions of tort . . . shall be commenced only within three years next after the cause of action accrues"). Therefore, claims based on alleged discriminatory actions must be filed within this timeframe. However, plaintiffs may invoke the "continuing violation" doctrine, which allows the statute of limitations to be extended when there is ongoing discriminatory conduct. This doctrine ensures that claimants are not barred from pursuing credible discrimination claims simply because they needed time to recognize a pattern of discrimination. Rae v. Woburn Public Schools, 113 F.4th 86, 103 (1st Cir. 2024). If a plaintiff establishes that a series of related discriminatory acts occurred within the statutory period, these acts can collectively form a timely claim, even if some fall outside the limitation period. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002); Doe v. Brown Univ., 327 F. Supp. 3d 397, 408 (D.R.I. 2018) (citing Loubriel v. Fondo del Seguro del Estado, 694 F.3d 139, 144 (1st Cir. 2012)). In Govan v. Trustees of Boston University, the court held that the plaintiff's claim accrued when she became aware of the harm after her unsuccessful appeal regarding her dismissal from the graduate program. 66 F. Supp. 2d 74, 81 (D. Mass. 1999).

The instant lawsuit was filed in May 2024. Setting the applicable statute of limitations three years prior to filing— the relevant period begins on May 14, 2021. However, significant

conduct occurred prior to this date that merits consideration.[5]  It is alleged in 2019, Dr. Karim looked at Youshaei with disgust after he identified himself as Israeli-Iranian and then failed him on a practical examination.  This grade was ultimately overturned.  Years later in 2022, Dr. Karim was Youshaei's grader on his CCPE retake and failed him yet again, resulting in his first dismissal from the Program.  This dismissal was also overturned on appeal.  As in Govan, the claim does not accrue until after the negative conduct or an *unsuccessful* appeal regarding such misconduct. Similarly, Youshaei's claim did not become actionable until he was denied any pathway to continue to pursue a doctorate degree, which occurred in April 2024.

MGH-IHP asserts that Youshaei cannot demonstrate a series of discriminatory acts stemming from the same animus, and that Youshaei's allegations that he had restricted access to study resources and support and differing test conditions for his practical examination would not suffice alone.  However, this treatment must be viewed while also considering the multiple occasions when plaintiff was questioned by several professors about his ability to treat patients with differing identities from his own protected status.  It can be inferred that his protected status is the reason for the animus.  Youshaei has also alleged that MGH-IHP had actual knowledge of harassment from both Youshaei and his lawyer, and also demonstrated a "deliberate indifference" to the harassment because MGH-IHP did not take any action to investigate—and if necessary remedy—the conduct.  Given that Youshaei faced significant academic penalties seemingly tied to these discriminatory behaviors, including being twice dismissed from the

---

[5] Youshaei asserts the applicability of the "continuing violation" doctrine to his hostile environment claim, but MGH-IHP argues that binding authority for applying this doctrine to Title VI claims is absent in this District.  As previously stated, Title IX and Title VI are analogous, and courts in this District have applied the continuing violation doctrine under Title IX.  See, e.g., LeGoff v. Trustees of Bos. Univ., 23 F. Supp. 2d 120, 127 (D. Mass. 1998).  Therefore, a similar extension is deemed appropriate for Title VI claims as well.

Program, the context and interconnectedness of Youshaei's allegations suggest a plausible inference of a hostile educational environment.

This Court concludes that Youshaei has presented sufficient allegations to withstand the motion to dismiss, contrary to MGH-IHP's assertion that these incidents do not rise to the level of severity or pervasiveness necessary to maintain a claim. Defendants may renew their arguments at the summary judgment stage, if appropriate at that time. Accordingly, the motion to dismiss as to the hostile educational environment claim is **DENIED**.

### B.     Intentional Discrimination

Next, MGH-IHP argues that Youshaei's intentional discrimination claim fails because his allegations of unequal treatment alone are not enough to show discriminatory intent or support the conclusion that the adverse treatment was intentional and motivated by unlawful bias. An intentional discrimination claim under Title VI requires the plaintiff to demonstrate they were intentionally discriminated against based on their protected status, the discrimination was intentional, and the discriminatory actions were motivated by animus toward the protected class. Bray v. Worcester Polytechnic Inst., 596 F. Supp. 3d 142, 156 (D. Mass. 2022). To successfully prove an intentional discrimination claim, the plaintiff must establish that the decisionmaker selected or reaffirmed a particular course of action because of its adverse effects upon an identifiable protected group or its members. Id. A school "is liable for intentional discrimination when it has been 'deliberately indifferent' to teacher or peer harassment of a student." Pollard v. Georgetown Sch. Dist., 132 F. Supp. 3d 208, 230 (D. Mass. 2015).

In the present case, taken together and drawing reasonable inferences from his allegations, the Court finds that Youshaei has plausibly alleged intentional discrimination under Title VI. Specifically, Youshaei alleges that because he wore a religious emblem, he had adverse

**12**

experiences with Dr. Karim and stopped wearing the emblem. He made Professor Clock aware, but Youshaei's protected status remained a focal point for several other professors, prompting multiple unsolicited conversations around his race, ethnicity, religion, and any impact these may have on his professionalism. He was required to take the CCPE later than and with restricted resources from his classmates because he was a "special circumstance," and several adverse actions by professors were overturned. He was the only student to be given a professor as a mannequin during the CCPE. For his CCPE retake, he was assigned Dr. Karim as a grader despite his previously expressed concerns about biased grading on her part. Youshaei alleges that both of his in-field supervisors were advised by MGH-IHP to be "tough" on him during his clinical rotations. Indeed, the Student Grievance Panel cited inequitable rule application on the part of MGH-IHP and reversed his dismissal from the Program. Given the context and the nature of the allegations, Youshaei has laid a sufficient foundation for his claim of intentional discrimination under Title VI. Accordingly, the motion to dismiss this claim is **DENIED**.

   **C. Availability of Damages**

   Youshaei requests that the court award him various forms of damages, including compensatory damages, if he prevails. [Dkt. 22 at 40]. The court must evaluate whether the relief sought by Youshaei is permissible under Title VI and his contract claims.

   While Title VI allows for compensatory damages, emotional distress damages are explicitly excluded. Cummings, 596 U.S. at 220-30. The Supreme Court has articulated that the contract-law framework of Spending Clause statutes implies that funding recipients must generally recognize that they are subject to remedies traditionally available in breach of contract suits, and since emotional distress damages are not, funding recipients do not consent to such damages when accepting federal funding. Cummings, 596 U.S. at 230 ("Under Barnes, we

13

therefore cannot treat federal funding recipients as having consented to be subject to damages for emotional distress."). Similarly, under state law contract claims, emotional distress damages are likewise "generally not recoverable" for mental suffering. John Hancock Mut. Life Ins. Co. v. Banerji, 447 Mass. 875, 888 (2006). However, an exception allows a plaintiff to recover damages for emotional distress involving physical harm or that result from intentional or reckless conduct that is "extreme and outrageous." Id. (citing Agis v. Howard Johnson Co., 371 Mass. 140, 144–145 (1976)).

Youshaei's prayer for relief includes a request for compensatory damages. MGH-IHP argues that Title VI prohibits recovery for emotional distress damages and Youshaei fails to plausibly allege the extraordinary conditions required for an exception to the rule barring recovery in contract actions. Indeed, under the framework set forth by the Supreme Court, Youshaei cannot sustain emotional distress damages related to his Title VI claims. There are no allegations that Youshaei suffered any physical harm, so he cannot invoke that exception for his state-law contract claims. Nevertheless, the Court finds that the allegations, if true, may rise to the level of "extreme and outrageous conduct" to warrant emotional distress damages. This Court therefore declines to dismiss or strike the request for compensatory damages at this stage of the proceedings.

### IV. CONCLUSION

For the foregoing reasons, the MGH-IHP's Partial Motion to Dismiss [Dkt. 23] is **DENIED**.

    **SO ORDERED.**

Dated: March 17, 2025            /s/ Angel Kelley
                                                                   Hon. Angel Kelley
                                                                    United States District Judge